IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIE DELK,<br><br>Plaintiff,<br><br>vs.<br><br>PNC Bank, N.A.<br><br>Defendant. | Civil Action No. 1:23-cv-01365<br>Assigned To: (ABJ)<br>Date : 6/23/2023 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF DEFENDANT PNC BANK, N.A. TO DISMISS AMENDED COMPLAINT**

**I.        INTRODUCTION**

Plaintiff brought this action to require Defendant's bank to accept Mr. Delk's duly executed Durable Power of Attorney and to compel the Defendant to allow Plaintiff's attorney-in-fact and agent, Romell Robinson to withdraw monies from Plaintiff's performance checking account at Defendant's bank.  The Durable Power of Attorney was executed by Mr. Delk on November 18, 2021, in accordance with District of Columbia law and without conditions or restrictions.

**II.        FACTUAL BACKGROUND**

On January 20, 2023, Mr. Delk's agent (Romell Robinson) went to PNC Bank on Mr. Delk behalf and attempted to withdraw monies from Plaintiff's performance checking account. However, PNC's bank manager refused to recognize Mr. Delk's Durable Power of Attorney and denied Ms. Robinson's request to withdraw funds from Mr. Delk's account.  The manager told agent Robinson to obtain and submit a medical statement to the bank describing Mr. Delk's

1

medical condition. Although she was not required to do so under her authority as Mr. Delk's agent and attorney-in-fact, Ms. Robinson gave a medical statement to PNC bank from the U.S. Department of Veteran Affairs Medical Center on January 23, 2023. The VA hospital provided a telephone number (202) 384-6249 to confirm the information in its medical statement. Oyesola Akintan signed the medical statement in accordance with the U.S. Department of Veterans Affairs Veterans Health Administration Directive 1134, which is based upon the U.S. Code of Federal Regulations, 38 CFR 17.38(a)(1)(xv).   See, Exh. #2 TRO Complaint and Reply Exh. A.

The Defendant's representative, Ms. Rebecca Thompson called Mr. Delk at his home on March 15, 2023, and spoke with Mr. Delk about his complaint, but the bank still refused to follow his directions as a customer of the bank. See, Exh. #6 TRO Complaint. On March 20, 2023, Ms. Robinson signed an agreement with PNC Bank, which allowed "Visiting Angels" Home Nursing Care Services to withdraw Nine Hundred Fifty-Six Dollars and Twenty-Five Cents ($956.25) per week from Mr. Delk's checking account to cover the costs of his weekly home nursing care. *See attached, Exh. #11, Visiting Angels Homecare documents.*

This is evidence that the Defendant bank was fully aware of Mr. Delk's home bound condition, and that the bank agreed with his attorney-in-fact to permit the withdrawal of funds from his account. The bank cannot now claim that it was unaware of Mr. Delk's medical condition or caregiver. The bank simply refused to release Mr. Delk's account monies to Ms. Robinson, and intentionally sought micromanage Mr. Delk's checking account and control all facets of his account withdrawals, even when they ran counter to Mr. Delk's wishes and directions. This clearly demonstrates that PNC Bank acted in bad faith by refusing to allow Ms. Robinson to withdraw funds from Mr. Delk's account.

On April 19, 2023, Ms. Romell Robinson, Mr. Delk's agent provided the bank with a notarized certification of her authority and she described the condition of Mr. Delk. See, Exh. #7 TRO Complaint. This was made pursuant to D.C. Code § 21-2601.19 (d)(1). On April 19, 2023, the bank was also given Attorney Walton's Opinion letter describing Mr. Delk's condition pursuant to DC Code § 21-2101.09 (c)(2) - DC Power of Attorney Law, and D.C. Code § 21-2601.09 (c)(2) and 21-2601.19 (d)(3). The bank agreed to allow Ms. Robinson to pay the nursing agency through a direct automatic withdrawal payment system, but otherwise refused to allow Ms. Robinson to withdraw monies from Mr. Delk's account. PNC bank's representatives also made no attempt to use the VA Hospital telephonic contact number to confirm the information provided by the VA hospital. Defendant's inaction was in bad faith.[1]

### III.   ARGUMENT

#### I.   Legal Standard

The Court does not require "heightened fact pleading of specifies, but only enough facts to state a relief that is plausible on its face." *Bell Atl. Corp v. Twombly,* 127 S.Ct. 1955, 1974. In making this determination, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally." *Roth v. Jennings,*_____F.3d_____, 2007 WL 1629889, at *11 (2d Cir. June 6, 2007) (citation and internal quotation marks omitted). "[T]he bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" *Twombly,* 127 S.Ct. 1955, 1960. "''The rule applies with particular force where the plaintiff alleges civil rights

---

[1] Why did PNC Bank need a physician's medical statement to verify Mr. Delk's medical condition, when the bank authorized via the signature of Ms. Robinson, *Visiting Nurses Homecare Company* to withdraw $956.00 per week to pay for Mr. Delk's homebound nursing services.

violations. . . .'" *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998).

A.     **Definition of Notice Pleading**

The Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts.  Accordingly, Defendant's Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligib[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epps Tech,* 636 F. Supp.2d at 63 (citations omitted).

The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and dispose of unmeritorious claims. *Swierkiewicz,* 534 U.S. at 512.  Indeed, courts have found that if the information sought by the motion is obtainable through discovery, the motion should be denied. *See, e.g., Towers Tenant Ass'n v. Towers Ltd.. P'ship,* 563 F. Supp. 566, 569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery and need not be pleaded").

B.     **The Uniform Power of Attorney Act (§ 21-2601.09) did not apply to the Facts of This Case Between January 20-23, 2023: The Governing Statute in January 2023 Was D.C. Code § 21-2101.09 et seq.**

Between January 20-23, 2023, the controlling Durable Power of Attorney Statute was D.C. Code § 21-2101. et. seq.  This statute was repealed on February 23, 2023, when the Uniform Power of Attorney (D.C. Code §21-2601. et seq.) became effective.  Prior to February 23, 2023, the facts and law relating to issues brought under a Durable Power of Attorney were governed under the former statute – 21-2101. et. seq.

4

### a. Defendant Inserts Facts and Words In Plaintiff's Durable Power of Attorney That Do Not Exist.

The Defendant attempts to argue the merits of the case in a motion to dismiss. This is the wrong venue. First, Defendant mistakenly argues that Mr. Delk's Durable Power of Attorney is **conditioned** upon the event of Delk's mental or physical condition. Def.'s Mot. At p. 5, ¶ 1, line 5. Nowhere in Mr. Delk's POA does it state that agent Robinson's authority and/or effectiveness is "conditioned" upon the event of Mr. Delk's mental or physical disability condition. This position is a figment of the Defendant's imagination.

Secondly, Defendant asserts that "Upon reviewing the terms of the Power of Attorney requiring the 'mental or physical disability of [Delk]' before the Power of Attorney would become **effective**, PNC Bank requested that Robinson present a medical statement certifying Delk's incapacity consistent with D.C. Code §21-2601.09. *Id.*" Def.'s Opp. to Pl. Mot. For Temporary Restraining Order and Preliminary Injunction, p. 2, ¶ 3, line 3. Defendant's statement is erroneous and unreconcilable. Mr. Delk's POA never stated that agent Robinson's authority would become "**effective**" at a future point in time. Ms. Robinson's authority to act became effective when Mr. Delk signed (executed) his Durable Power of Attorney on January 18, 2021.

The weakness of this assertion is admitted by Defendant PNC Bank. Defendant states that "While District of Columbia case law is sparse on the issue of conditions precedent in Powers of Attorney and proofs of incapacity in the context of the Uniform Power of Attorney Act, the Act is clear and courts in other jurisdictions generally hold that a power of attorney is not authorized until the specified requisites are met.. ." Def's previous Mot. To Dismiss at p. 5, ¶ 1, filed on June 5, 2023, but denied as moot.

5

> **b. The Fallacy in Defendant's Argument is that the Words POA's <u>effective</u> date of a <u>future event</u> or <u>conditional continency</u> was never mentioned or stated in Mr. Delk's POA. This was for good reason.**

D.C. Code §21-2601.09 provides in pertinent part that,

> (a) A power of attorney is effective when executed unless the principal provides in the power of attorney that it becomes **effective** at a future date or upon the occurrence of a future event or continency.

*Emphasis added.*

Mr. Delk's POA made no mention of the agent's powers taking place on a date effective in the future or becoming effective based upon the occurrence of a future event. Therefore, it cannot be read into the POA or imaginarily placed in Delk's Durable Power of Attorney.[2]

Thirdly, Defendant states that "The fact that Robinson claims to have presented the Power of Attorney one month before the effective date of the Act is also of no moment, as Defendant owed a duty to its customer to confirm that the precondition of 'mental or physical disability' was met and nothing in the previous statute barred the Bank's demand for evidence of incapacity.[3]

Fourth, PNC Bank admits that on March 15, 2023, Defendant's Executive Client Relations Representative, Rebecca Thompson spoke with Plaintiff Willie Delk by telephone and was told by her customer, Willie Delk to permit his attorney-in-fact and agent Romell Robinson to withdraw monies from his PNC performance checking account. However, the PNC refused to follow his

---

[2] It is also significant to note that on January 20, 2023, and on February 8, 2023, D.C. Code §21-2601 et. seq., did not exist. It did not come into existence until February 23, 2023. While this statute controlled all POA's made on, before or after its effective date, the applicable law could not be applied before its effective date.

[3] Defendant continues to conceal the fact that it allowed *Visiting Angels Homecare agency* ( with the written approval of agent Robinson) to withdraw $956.25 per week from Mr. Delk's performance checking account to cover his homecare nursing and caregiver service needs. It is therefore abundantly clear that the Defendant was aware of Mr. Delk's health and disabling condition. Unfortunately, PNC Bank continues to act in bad faith and deny the fact that it knew Mr. Delk was and is incapacitated. *See, Exhibit #11 and the Visiting Angels internet website.*

demand. PNC Bank purposely and intentionally disregarded its customer's order and breached its fiduciary duty to customer Delk.

Equally significant, PNC Bank argues that "[T]he Bank is not a party to the VA Client Services Agreement and the agreement is not signed by a physician, the requirement of the Uniform Power of Attorney Act." Def.'s Mot. To Dismiss at p. 7. That is exactly the point, PNC Bank accepted an unsigned VA Client Services Agreement without the signature of a physician because the Bank knew it was not required. In addition, the Bank agreed to and has made numerous payments to *Visiting Angels Homecare Service Company* on behalf of Mr. Delk because the Bank was aware of Mr. Delk's medical condition. Both parties agreed to this arrangement. The Bank was and is aware that *Visiting Angels Homecare Service* is a third-party beneficiary of the contract between Mr. Delk and PNC Bank.

Generally, a stranger to a contract may not bring a claim on the contract. *General Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit."). "[A]n indirect interest in the performance or undertakings" is insufficient. *Id.* (citations and internal quotation marks omitted). "In order to sue for damages on a contract claim, a plaintiff must have either direct privity or third-party beneficiary status." *Alpine County, California v. United States,* 417 F.3d. 1366, 1368 (Fed. Cir. 2005) (citing *Anderson v. United States,* 344 F.3d 1343, 1352 (Fed. Cir. 2003)). "Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status. *Id.* Here, Mr. Delk and PNC Bank made a direct and express agreement to pay *Visiting Angels Homecare Services, LLC* for homecare nursing services.

THE RESTATEMENT (SECOND) CONTRACTS ("RESTATEMENT") uses "the terms 'intended' beneficiary and 'incidental' beneficiary. . .to distinguish beneficiaries who have rights from those who do not." RESTATEMENT, Chapter 14, Introductory Note (1981). *See and compare, Fort Lincoln Civic Association, et. al. v. Fort Lincoln New Town Corporation, et. al.,* 944 A.2d 1055 (D.C. 2008). As an "intended" beneficiary of the contract between Mr. Delk and the PNC Bank, *Visiting Angels Homecare, LLC* has concrete and vested legal rights against the parties to the agreement. In this regard, *Visiting Angels* became a third-party beneficiary contract customer of PNC Bank. The parties and the intended beneficiary are intertwined within the contractual agreement. Mr. Delk will not argue the merits of the Amended Complaint at this time because it is not the appropriate time for such an argument.

C.  **Plaintiff's Claims Alleging Violations of D.C. Code § 21-2101.01 et. seq. – Statutory Power of Attorney (Repealed on February 23, 2023) State a Claim for Which Relief Can Be Granted.**

Without being redundant, the Amended Complaint at para. 86, incorporates all information and allegations in the preceding paragraphs of the Amended Complaint as if fully set forth previously. Plaintiff proceeds to set-forth additional facts and claims from paragraphs 87 through 97 of Count Nine. There can be no clearer set of allegations. Defendant refused to comply with the statute in existence on or about January 20, 2023. Defendant refused to recognize Plaintiff's Durable Power of Attorney and refused to allow Plaintiff's agent to withdraw funds from Mr. Delk's PNC performance checking account. There was no "performance" on the part of the bank.

D.  **Plaintiff's Breach of Contract Claim States a Claim for Which Relief Can Be Granted.**

Plaintiff 's Count Ten at paragraph 98 incorporates all information, facts, law and/or allegations and realleges the facts set forth previously in the Amended Complaint. In addition, Count Ten alleges more specific facts beginning at para. 99 through 105. Under District of

Columbia law, the elements of a valid contract are (1) An intent to be bound; (2) Agreement on all material terms; (3) Assumption of mutual obligations, including: an offer, an acceptance, and consideration. *See, REO Acquisition Grp. v. Fed. Nat'l Mortg. Ass'n,* 104 F. Supp. 3rd 22, 28 (D.D.C. 2015) (applying District of Columbia law); *SJ Enters, LLC v. Quander,* 207 A.3d 1179, 1183 (D.C. 2019); *Dyer v. Biiaal,* 983 A.2d 349, 356 (D.C. 2009)).

Defendant obviously understands the breach of contract claims because PNC Bank admits that a contract exists between Mr. Delk and the bank. Defendant states that "[T]he contractual relationship between the Bank and Delk is governed by the Bank's Account Agreement." Def. Mot.to Dismiss, p. 8, ¶ 3, line 1. Mr. Delk alleges that PNC Bank refuses to recognize his Durable Power of Attorney and allow his duly authorized agent to withdraw monies from his account. As of this writing, the bank still refuses to honor Mr. Delk's demand. The Bank is also aware of the third-party beneficiary contract held by *Visiting Angels Homecare Services, Inc.* Therefore, the breach of contract claim is clear on its face.

E.      **Plaintiff's Claims Under 42 U.S.C. § 1981, et seq., State A Claim for Which Relief Can Be Granted.**

Plaintiff's 42 U.S.C. § 1981 claims under Count Two (Race Discrimination) and Count Six (Reprisal) state claims for Which Relief Can Be Granted. Section (a) Statement of Equal Rights provides that,

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

9

PNC Bank neglects to include section (b) "Make and Enforce Contracts" Defined, which. states that,

> For purposes of this section, the term "make and enforce contracts" includes the making, **performance**, modification, and termination of contracts, and the **enjoyment of benefits, privileges, terms and conditions** of contractual relationship.

*Emphasis added.*

Section (c) Protection Against Impairment provides that,

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Plaintiff Delk has alleged that because of his race, he has been denied the enjoyment of benefits, privileges and terms and conditions of the contractual relationship with PNC Bank. In other words, the Defendant is liable for breach of contract. The Defendant is a nongovernmental body that has discriminated against Mr. Delk. This allegation has been alleged throughout the Amended Complaint. PNC Bank surely does not contend that it is not on notice and does not understand the allegations of breach of contract.

**a. Plaintiff's Claims Under 42 U.S.C. § 1981 – Equal Rights Under Law Are Sufficiently Plead As Required by Fed. R. Civ. Pro. R. 8.**

Plaintiff Willie Delk has alleged claims of discrimination against PNC Bank based upon race and reprisal ("aka" retaliation) because of the Defendant's refusal to allow his agent and attorney-in-fact to withdraw funds from his account that is maintained at PNC National Bank. PNC Bank is a public accommodation banking institution under federal and local law. These allegations can be found in Counts Two and Six. Here, Plaintiff has alleged a prima facie case of discrimination. Defendant PNC Bank admits that Counts Two and Six fall within the jurisdiction of federal law under 42 U.S.C. 1981 ("Section 1981"). However, it is Defendant's contention that

in each of the above counts, Plaintiff Delk "has failed to plead sufficient factual allegations to state a claim to which relief is plausible." Defendant's contention is in error.

The U.S. Supreme Court has established the test for determining whether a pleading is sufficient under Rule 12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court replaced the "no set of facts" standard of *Conley v. Gibson,* 355 U.S. 41, 41-46 (1957), with the new standard of "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.[4]  In *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), the Supreme Court held that to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." According to the Court, a claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556.

In the instant case, Mr. Delk has maintained that the Defendant refused to allow his authorized agent and attorney-in-fact (Romell Robinson) to withdraw monies from his performance checking account at Defendant's bank.  Plaintiff maintained that the refusals occurred on January 20, 2023 – January 23, 2023, and February 8th and 28, 2023.  Plaintiff asserts that the Defendant continues to refuse to give Ms. Robinson access to Delk's account without proof of a medical statement from his medical provider – one that has been previously given to the Defendant by the Plaintiff.

Although not required on January 23, 2023, and on February 8, 2023, Plaintiff's agent gave the Defendant a medical statement from the U.S. Veterans Administration Medical Center where he is being medically treated.  Plaintiff also alleged that the Defendant permitted via the

---

[4] The Conley standard was that "a complainant should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46.

approval of agent Robinson, Visiting Angels Homecare Agency to withdraw $956.25 per week from Mr. Delk's checking account, while at the same time refusing to permit Ms. Robinson from withdrawing funds for his household expenses, additional nursing care, property taxes, and food.

Plaintiff maintained that the Defendant's actions were motivated by his veteran's status, race, sex, age and in reprisal for his complaints about the conduct of the bank and its employees. Plaintiff maintains that similarly situated customers were treated differently, and that the actions of the Defendant were discriminatory in nature.[5]  Plaintiff has plead approximately one hundred paragraphs related to Defendant's actions.  Mr. Delk's pleadings were modeled after the *McDonnell Douglas v. Green,* 411 U.S. 792, standard.  In *Swierkiewicz v. Soreman,* 534 U.S. 506 (2002), the Supreme Court held that "An employment discrimination complaint need not contain specific facts establishing a prima facie case under the *McDonnell Douglas* framework, but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief.

The Supreme Court went on further to rule that the precise requirements of the prima facie case can vary with the context and were "never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567 (1978).  Plaintiff admits that his case is not an employment discrimination suit, but closely parallels cases of employment discrimination in the establishment of a *prima facie* case of public accommodation discrimination.  Plaintiff has plead more than sufficient facts under Rule 8.

---

[5] It is undisputed that PNC bank permitted *Visiting Angels Homecare Agency (Helping Our Seasoned Seniors Thrive, LLC)*, to withdraw monies from Mr. Delk's checking account, but denied Plaintiff's agent the right to do the same. This is certainly disparate treatment, and the company (*Visiting Angels*) is clearly a third-party beneficiary contract customer and person under the law.

**F.     Plaintiff's Claims Under Title II of the Civil Rights Act of 1964 State A Claim For Which Relief Can Be Granted.**

Plaintiff Willie Delk has alleged discrimination claims under Title II of the Civil Rights Act of 1964 against PNC Bank based upon his veteran's status, race, sex. age and retaliation. The claims are based upon PNC Bank's refusal to allow Mr. Delk's agent and attorney-in-fact to withdraw funds from his account that is maintained at PNC National Bank.  PNC Bank is a public accommodation banking institution under District of Columbia law.  These allegations can be found in Counts One, Two, Three, Five and Six.  Here, Plaintiff has alleged a prima facie case of discrimination under Title II of the Civil Rights Act of 1964.  It is Defendant's contention that in each of the above counts Plaintiff Delk "has failed to plead sufficient factual allegations to state a claim to which relief is plausible."  Defendant's contention is in error.

The U.S. Supreme Court has established the test for determining whether a pleading is sufficient under Rule 12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court replaced the "no set of facts" standard of *Conley v. Gibson,* 355 U.S. 41, 41-46 (1957), with the new standard of "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.[6]  In *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), the Supreme Court held that to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." According to the Court, a claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556.
In the instant case, Plaintiff Delk has consistently maintained that the Defendant refused to allow his authorized agent and attorney-in-fact (Romell Robinson) to withdraw monies from his

---

[6] The Conley standard was that "a complainant should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46.

13

performance checking account at Defendant's bank. Plaintiff maintained that the refusals occurred on January 20, 2023 – January 23, 2023, and February 8th and 28, 2023. Plaintiff asserts that the Defendant continues to refuse Ms. Robinson access to Delk's account without proof of a medical statement from his medical provider – one that has been given to the Defendant by the Plaintiff.

Although not required on January 23, 2023, and on February 8, 2023, Plaintiff's agent gave the Defendant a medical statement from the U.S. Veterans Administration Medical Center where he is being medically treated. Plaintiff also alleged that the Defendant permitted via the approval of agent Robinson, Visiting Angels Homecare Agency to withdraw $956.25 per week from Mr. Delk's checking account, while at the same time refusing to permit Ms. Robinson from withdrawing funds for his household expenses, nursing care services, property taxes, and food.

Plaintiff maintained that the Defendant's actions were motivated by his veteran's status, race, sex, age and in reprisal for his complaints about the conduct of the bank and its employees. Plaintiff maintains that similarly situated customers were treated differently, and that the actions of the Defendant were discriminatory in nature.[7] Plaintiff has plead approximately one hundred paragraphs related to Defendant's actions. Mr. Delk's pleadings were modeled after the *McDonnell Douglas v. Green,* 411 U.S. 792, standard. In *Swierkiewicz v. Soreman,* 534 U.S. 506 (2002), the Supreme Court held that "An employment discrimination complaint need not contain specific facts establishing a prima facie case under the *McDonnell Douglas* framework, but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[7] It is undisputed that PNC bank permitted *Visiting Angels Homecare Agency (Helping Our Seasoned Seniors Thrive, LLC)*, to withdraw monies from Mr. Delk's account, but denied Plaintiff's agent the right to do the same. This is certainly disparate treatment, and the company (*Visiting Angels*) is clearly an intended third-party beneficiary customer and person under District of Columbia law. *D.C. Code § 45-604.*

14

The Supreme Court went on further to rule that the precise requirements of the prima facie case can vary with the context and were "never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567 (1978). Plaintiff admits that his case is not an employment discrimination suit, but closely parallels cases of employment discrimination in the establishment of a *prima facie* case of public accommodation discrimination. Plaintiff has plead more than sufficient facts under Rule 8.

    **a.    Plaintiff's Claims Under Title II of the Civil Rights Act of 1964 May Be Inferred From the Statute Although not Expressly Stated Therein.**

Defendant contents that Title II of the Civil Rights Act of 1964 does not apply to the protection of an individual's veteran's status, sex and age because they are not specifically mentioned in the coverage of Title II. Plaintiff admits that an individual's veteran's status, sex and age are not specifically delineated in Title II. However, Plaintiff maintains that these grounds (veteran's status, sex, and age) should be inferred because of the broad coverage of Civil Rights Act of 1964. A clear tradition of American law is that civil rights laws and other remedial statutes are to be construed liberally to achieve their remedial purposes. The classic statement in decisions of the Supreme Court has been that such legislation "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results. *Voris v. Eikel,* 346 U.S. 328, 333 (1953); *Northeast Marine Terminal Co., Inc. v. Caputo,* 432 U.S. 249, 268 (1977); *Director, OWCP v. Penn North River Associates,* 459 U.S. 297, 315-16 (1983); *Estate of Covart v. Nicklos Drilling Co.,* 505 U.S. 469, 502 (1992); *Potomac Elec. Power Co. v. Director OWCP,* 449 U.S. 268, 281 (1980); *Reed v. the Yaka,* 373 U.S. 410, 415 (1963); *Baltimore & Phila. Steamboat Co. v. Norton,* 284 U.S. 408, 414 (1932).

It is well-settled that civil rights legislation is a type of "remedial" legislation that warrants such favorable interpretation. *O'Sullivan v. Felix,* 233 U.S. 318, 324-25 (1914) (civil actions under

15

Civil Rights Act are remedial); *Burnett v. Grattan,* 468 U.S. 42, 49 (1984) ("the broadly remedial purposes of the Civil Rights Acts"), See also *Patterson v. McLean Credit Union,* 491 U.S. 164, 181 (1989) ("detailed remedial scheme" of Title VII of Civil Rights Act of 1964).

Plaintiff believes that the Court should impliedly include PNC Bank as a place of public accommodation under Title II. Although Title II does not explicitly include "financial institutions," banks are now found to provide services and products that are representative of places of public accommodation. This would be consistent with current District of Columbia law which defines banks, savings and loan associations and other financial institutions as places of "public accommodation." *See, D.C. Code § 2-1401.02(24) Definitions.*

Title II of the Civil Rights Act of 1964 provides that "[a]ll **persons** shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section without discrimination or segregation on the ground of race, color, religion, or national origin." Title II was promulgated and passed into law in 1964. However, the law has evolved within the last fifty-nine (59) years. Because Title II is a Civil Rights Statute, which is remedial in nature, coverage should be inferred to cover all **"persons"** and **"places of public accommodation"** as defined under the Americans With Disabilities Act (Article III), and current District of Columbia law.

**G.    Plaintiff's Claims Under The Americans With Disabilities Act ("ADA") State A Claim for Which Relief Can Be Granted.**

Plaintiff Delk's Claim under the American With Disabilities Act states a claim for which relief can be granted. Plaintiff states that the jurisdictional citation for "Count Four" is listed as "Americans With Disabilities Act of 1990." This is the correct Title alleging discrimination against individuals suffering from discrimination based upon mental or physical disability. In the body of the Count, Plaintiff Delk stated 42 U.S.C. §12101 et. seq., as jurisdictional authority. This

16

numerical quotation is correct. *See,* Amended Compl. at para. 68. Plaintiff also inadvertently cited 42 U.S.C. §12112. Defendant has sought to height light Section 12112 but makes no mention of Plaintiff's first citation – 42 U.S.C. §12101 et. seq.

The Courts and the government have often held that "If an instrument contains contradictory terms, typewritten terms prevail over printed terms, handwritten terms prevail over both and words prevail over numbers." *See and compare, D.C. Code § 28:3-114. Contradictory terms of instrument, and  Uniform Commercial Code §3-114.* Plaintiff Delk alleges violations under 42 U.S.C. §12101 et. seq., only. Defendant's opposition at p. 12, asserts that "Defendant is not discriminating against Delk on account of a disability. It is seeking to confirm the existence of a disability so that it might comply with Delk's wishes as evidenced in the Power of Attorney. However, the evidence shows that Defendant was fully aware of Mr. Delk's disability when PNC Bank approved the application of *Visiting Angels Homecare agency's* monetary withdrawal request. The bank's representative, Ms. Rebecca Thompson also confirmed the same during her conversation with customer Willie Delk.

*Emphasis added.*

Equally important, with respects to Defendant's assertion that "his [Delk's] claims still fail because he has again not pled sufficient facts establishing a disability, that Defendant had notice of this disability, nor that Defendant treated a person similarly situated in a different manner, Plaintiff disagrees. The Amended Complaint at p. 14, ¶ 66, states that "Plaintiff incorporates all information and allegations in the preceding paragraphs as if fully set forth herein." Ms. Romell Robinson's certification and affidavit also provides notice to the Defendant. Attorney Walton's opinion letter did the same. PNC Bank's acceptance of, and participation in *Visiting Angels Homecare Services, LLC*'s third-party beneficiary contract, and the bank manager's telephonic

discussion with Mr. Delk, and personal conversations with agent Romell surely put PNC Bank on notice of Mr. Delk's condition. This fully places the Defendant on notice of Delk's claim of discrimination under the Americans With Disabilities Act.

**H.     Plaintiff's Claims Under the D.C. Human Rights Act State A Claim For Which Relief Can Be Granted.**

Plaintiff has filed a D.C. Human Rights Act complaint in the Amended Complaint. Defendant is on notice of the requisite D.C. Statute being violated based upon the allegations contained in Plaintiff Delk's Amended Complaint. In addition, Plaintiff has alleged in the Amended Complaint at p. 17, ¶ 84, that "Plaintiff incorporates all information, facts, law and/or allegations and realleges the facts set forth above and contained in the preceding paragraphs." Defendant cannot assert that it lacked notice and understanding of the D.C. Human Rights law being violated. The Act covers every count alleged by Mr. Delk.

Finally, Plaintiff Delk alleged violations of D.C. Code §§ 21-2601.01, et. seq., (Count Eight) and 21-2101.01, et. seq., Count Nine), and "Breach of Contract" (Count Ten). The counts all incorporated the information, facts, law and/or allegations of the preceding paragraphs as set forth above and contained in the Amended Complaint. Defendant cannot assert that it was not on notice of the facts and law.

D.C. Code § 2-1401.02(24) of the D.C. Human Rights Act, provides in pertinent part that a "Place of public accommodation" means any person or place that provides, to a person in the District, access to an accommodation, service, or good, whether or not that person or place maintains a physical location in the District or charges for those goods or services, such as . . . .banks, savings and loan associations, establishments of mortgage bankers and brokers, all other financial institutions. . . .   PNC Bank and all financial institutions are subject to and fall under the

laws prohibiting discrimination against a person's military veteran's status, race, sex, mental and/or physical condition and age. The statute also prohibits unlawful retaliation for having complained of discriminatory conduct by a wrongdoer. In Count Seven, from paragraphs 1- 85, this is exactly what has been alleged.

## Conclusion

For all the above reasons, Defendant's Motion to Dismiss the Amended Complaint should be denied in its entirety.

Respectfully submitted,

*Frazer Walton, Jr.*
Frazer Walton, Jr.
DC Bar No. 374301
1913 D. Street, N.E.
Washington, DC 20002
(202) 398-8920
Email: Frawalton@verizon.net

Attorney for Plaintiff Willie Delk