**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIE DELK,<br><br>Plaintiff,<br><br>v.<br><br>PNC BANK, N.A.,<br><br>Defendant. | ) | Civil Action No. 23-1365 (ABJ) |

**MEMORANDUM OPINION AND ORDER**

On May 15, 2023, plaintiff Willie Delk filed a complaint seeking a declaratory judgment and injunctive relief to require the defendant bank to "accept [plaintiff's] 'Durable Power of Attorney,' and compel the Defendant to allow [plaintiff's] attorney-in fact and agent, Romell Robinson to withdraw monies from Plaintiff's performance checking account at Defendant's bank." Compl. [Dkt. # 1] ¶ 1. On the same day, he filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and for Waiver of Bond [Dkt. # 2] ("TRO Mot."). The Court convened a scheduling hearing on May 18, 2023, *see* Min. Entry (May 18, 2023), and established a plan for addressing the issues on an expedited basis. Defendant has opposed the motion, *see* Def.'s Opp. to TRO Mot. [Dkt. # 6] ("Opp."), and plaintiff has filed a reply. *See* Pl.'s

Reply to Def.'s Opp. to TRO Mot. [Dkt. # 10] ("Reply").[1] Because plaintiff has not demonstrated a likelihood of success on the merits, the motion will be **DENIED**.

## BACKGROUND

According to the amended complaint, plaintiff, a resident of the District of Columbia, is a "bedbound, 79-year-old Africa[n] American male, who is physically and mentally disabled." Am. Compl. [Dkt. # 13] ¶¶ 11, 14(b). Approximately two and a half years ago, he executed a notarized document in the District entitled "Durable Power of Attorney." *See* Plaintiff's Corrected Durable Power of Attorney [Dkt. # 5-1] ("POA"); Am. Compl. ¶ 3. The POA, dated January 18, 2021, appointed Romell Robinson as plaintiff's agent and attorney-in-fact "to act in the place and stead and with the same authority as the Principal . . . in the event of mental or physical disability of the Principal . . . ." POA at 1; Am. Compl. ¶ 9. The POA gave the agent the power to "conduct all business regarding . . . checking and savings account[s], including the deposit and withdrawal of funds, handling of safe deposit boxes, loans, or any other banking business regarding any and all financial institutions where the Principal maintains an account[s]." POA at 1 (brackets in original). The agent would also have the right to "make deposits and withdrawals of money" from

1 Defendant filed a Motion to Dismiss on June 5, 2023 [Dkt. # 12], and in response, plaintiff filed an amended complaint on June 5, 2023. [Dkt. # 13]. On June 7, 2023, the Court denied defendant's motion to dismiss the original complaint as moot, and the briefing of a renewed motion to dismiss has continued. Since the filing of the amended complaint extended the briefing schedule, and the amended complaint includes claims that go beyond the core issue underlying the emergency motion, plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is the only motion ripe for decision at this time.

any of plaintiff's bank accounts. *Id.* at 2. The POA further provided that it would not "be affected by subsequent incapacity or the lapse of time." *Id.* at 5.

Plaintiff has maintained a Performance Select Checking account with defendant bank for several years. Am. Compl. ¶ 15. He alleges that on January 20, 2023, his designated agent, Robinson, presented a copy of the POA to officials at one of defendant's branch offices and "complained that [the bank] would not allow her to withdraw monies from Mr. Delk's account." Am. Compl. ¶ 16. Plaintiff alleges that the branch manager informed Robinson that she needed a statement from the U.S. Veteran's Administration Hospital "describing and certifying [plaintiff's medical condition]." Am. Compl. ¶ 16.

Robinson went to the U.S. Department of Veteran Affairs Medical Center in Washington, D.C., and returned to the bank several days later with a one-paragraph statement on Department of Veterans Affairs letterhead ("January Letter"). Am. Compl. ¶¶ 17–18. The letter, signed by Oyesola Akintan on January 23, 2023, stated:

> This letter is acknowledged that Mr. Willie Delk is in my care. He is currently bedbound with memory loss. He is unable to do some of the activities that he used to do. His POA (Romell Robinson) is responsible to assist him in carrying out with his run around . . . .

Am. Compl. ¶¶ 17–18; Ex. 2 to Compl. The letter did not describe Akintan's title or position, but plaintiff has informed the Court that Akintan is a Home-based Primary Care Nurse Practitioner. *See* Ex. 1 to Mot. to File Under Seal [Dkt. # 7-1] ("May Letter").[2] Plaintiff complains that the bank continued to deny Robinson access to plaintiff's bank account after receiving Nurse Practitioner Akintan's letter. Am. Compl. ¶ 18. He asserts that on February 8 and 28, 2023,

---

2 At the May 17, 2023 telephonic status conference, plaintiff's counsel also stated that Akintan is a registered nurse and not a physician.

defendant "verbally declined" plaintiff's requests to allow Robinson to withdraw funds from his account because no physician's statement on office letterhead or a prescription pad had been provided. Am. Compl. ¶ 18.

On March 14, 2023, plaintiff filed a complaint against defendant with the U.S. Consumer Financial Protection Bureau ("CFPB") regarding defendant's refusal to "honor the POA." Am. Compl. ¶ 19; Ex. 3 to Compl. Defendant responded to the CFPB complaint on April 18, 2023, stating that plaintiff's request had been declined because a physician's statement was required "as the [POA was] effective upon disability of the principal." Am. Compl. ¶ 20; Ex. 6 to Compl. The bank reiterated that plaintiff was required to provide a physician's statement: on letterhead or prescription pad, dated within the last twelve months, and signed by a physician, which verified the "incapacity or inability of the principal to make financial decisions." Am. Compl. ¶ 20; Ex. 6 to Compl. On April 19, 2023, plaintiff provided defendant with a document from Romell Robinson described as a "certification as to the validity of" the POA, Ex. 7 to Compl. ("Robinson Certification"), as well as an "Opinion Letter" from his attorney of record. Ex. 8 to Compl ("Walton Letter"). The attorney stated that defendant was physically and mentally disabled,[3] and he requested that defendant permit Robinson to conduct plaintiff's financial affairs in accordance with the POA. *Id.* On May 3, 2023, Robinson returned to defendant's branch and attempted to withdraw funds from plaintiff's checking account. Am. Compl. ¶ 28. Defendant denied the request. Am. Compl. ¶ 28.

---

3   Plaintiff's insistence that the terms of the POA have been satisfied raises obvious questions concerning his competence to bring this action on his own behalf or to supply the affidavit submitted in support of the motion for interim relief. It is not necessary, though, to resolve those issues to address the pending motion, particularly given the limited nature of the information in the record at this time.

On May 15, 2023, plaintiff brought this action seeking a declaratory judgment and injunctive relief requiring the defendant to accept plaintiff's POA and allow Robinson to withdraw funds from plaintiff's checking account at defendant's bank. *See* Compl. ¶ 1; Am. Compl. ¶ 1. Plaintiff alleges that he has become "delinquent in the payment of his household bills, and the payment of his retained medical caregivers (nurses)" due to defendant's refusal to release the funds. Am. Compl. ¶ 29. Plaintiff simultaneously filed the TRO motion, seeking to enjoin the defendant "from preventing Plaintiff's attorney-in-fact and agent [Robinson] from handling Plaintiff's financial affairs at defendant's bank and preventing his agent from withdrawing funds." TRO Mot. at 1.

**STANDARD OF REVIEW**

"A temporary restraining order is an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011), citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Munaf v. Geren*, 553 U.S. 674, 690–91 (2008).

As the Supreme Court explained in *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008), when considering a motion for a temporary restraining order, the Court must consider whether the movant has met its burden of demonstrating that 1) it "is likely to succeed on the merits"; 2) it is "likely to suffer irreparable harm in the absence of preliminary relief"; 3) "the balance of equities tips in [its] favor"; and 4) an injunction serves the public interest. "The court considers the same factors in ruling on a motion for a temporary restraining order and a motion for a preliminary injunction." *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001). The manner in which courts should weigh the four factors "remains an open question" in this Circuit. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). For some

time, the Court of Appeals adhered to the "sliding-scale" approach, where "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (citations omitted).

However, the *Sherley* opinion explains that because the Supreme Court's decision in *Winter* "seemed to treat the four factors as independent requirements," the Court of Appeals has more recently "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley* at 393, quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring). Although the D.C. Circuit has not yet announced "whether the 'sliding scale' approach remains valid after *Winter*," *League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016), it has ruled that a failure to show a likelihood of success on the merits is sufficient to defeat a motion for a preliminary injunction. *See Ark. Dairy Coop Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009) (affirming a district court's denial of a preliminary injunction solely because there was no likelihood of success on the merits); *Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006) (same).

**ANALYSIS**

A necessary step in this inquiry, then, is to determine whether plaintiff has demonstrated a likelihood of success on the merits. To satisfy this factor, plaintiff must demonstrate that the POA is both valid and effective. While the POA appears to have been validly executed – and defendant does not dispute this[4] – plaintiff has failed to show that the POA is effective under D.C. law.

4 Defendant concedes that plaintiff "can easily remedy the situation by simply providing a signed physician's statement certifying his incapacity so that proper effect may finally be given to his Power of Attorney." Opp. at 9.

The POA appointed Robinson to act as plaintiff's agent "*in the event of* mental or physical disability of the Principal . . . ." POA at 1 (emphasis added). The POA is therefore plainly conditioned upon the event of plaintiff's mental or physical disability.[5] *Id.* Plaintiff's contentions that the POA gave his agent authority "immediately (as of January 18, 2021) to handle his financial affairs", Am. Compl. ¶ 23, and that "the effective date of Plaintiff Delk's durable power of attorney was never dependent upon the occurrence of a future event," Reply at 3, ignore the text of the POA. Plaintiff points to the language in the document stating that the POA "shall not be affected by subsequent incapacity or the lapse of time" as support for his contention that "the effective date of [the POA] was never dependent upon the occurrence of a future event." Reply at 3. But this provision does not contradict or invalidate the explicit terms setting forth the necessary predicate for when the POA becomes effective; rather, it establishes the durability of the POA, because a POA otherwise "terminates when . . . [t]he principal becomes incapacitated, if the power of attorney is not durable." D.C. Code § 21-2601.10(a)(2). The issue before the Court is therefore whether plaintiff is likely to succeed in his claim that the POA has been triggered in accordance with its terms and with D.C. law and therefore must be honored by the bank.

D.C. Code § 21-2601.09, entitled, "When power of attorney effective," provides:

> a) A power of attorney is effective when executed unless the principal provides in the power of attorney that it becomes effective at a future date or upon the occurrence of a future event or contingency.
>
> . . . .

---

5   Nurse Practitioner Akintan's January and May letters both state that plaintiff has been under her care since January 23, 2023. *See* January Letter; May Letter. Given that this falls two years after the POA was executed, there is no evidence in the record suggesting that plaintiff was incapacitated at that time such that the document would be ineffective for that reason, or that the POA went into effect on the day it was signed.

> (c) If a power of attorney becomes effective upon the principal's incapacity and the principal has not authorized a person to determine whether the principal is incapacitated, or the person authorized is unable or unwilling to make the determination, the power of attorney becomes effective upon a determination in a writing or other record by:
>
> (1) A physician that the principal is incapacitated within the meaning of § 21-2601.02(5)(A); or
>
> (2) An attorney at law, a judge, or an appropriate governmental official that the principal is incapacitated within the meaning of § 21-2601.02(5)(B).

D.C. Code § 21-2601.09. The POA here does not identify a person authorized to make the determination; therefore, it may only become effective under one of the options set forth in section 21-2601.09(c). In the complaint and the TRO motion, plaintiff maintained only that the prerequisites of § 21-2601.09(c)(1) – the physician's letter – had been fulfilled, but in his reply to the defendant's opposition, he advanced a new theory: that there has been a writing by an attorney that suffices. *See* Reply at 6.[6] But neither condition has been satisfied.

Plaintiff argues that the January 2023 letter from Nurse Practitioner Akintan, *see* TRO Mot. at 10, which was supplemented on May 23, 2023, *see* May Letter, satisfied the requirement in subsection (c)(1) of a letter from a "physician that the principal is incapacitated within the meaning of § 21-2601.02(5)(A), that is, having "an impairment in the ability to receive and evaluate information or make or communicate decisions even with the use of technological assistance."

---

6 Plaintiff also states that he supported his physician's letter through Robinson's certification and Walton's opinion letter under D.C. Code § 21-2601.19. *See* Reply at 9; Robinson Certification; Walton Letter. But this statute is irrelevant. Under section 21-2601.19, "[a] person that is asked to accept an acknowledged power of attorney may request, and rely upon, without further investigation" an "agent's certification" or an "opinion of counsel" concerning the POA. §§ 21-2601.19(d)(1), (3). Besides the fact that defendant has not requested such certifications, the statute merely provides that one can "rely upon" such documents without further investigation; nowhere does it state that such writings automatically render a POA effective.

D.C. Code § 21-2601.02(5)(A).  But – putting aside the troubling lack of precision and medical information in the rather unprofessional communications – both letters fall short for the simple reason that, as plaintiff has conceded, Nurse Practitioner Akintan is not a physician.

Nor has plaintiff provided certification from an "attorney at law, a judge, or an appropriate governmental official that the principal is incapacitated within the meaning of § 21-2601.02(5)(B)."  § 21-2601.09(c)(2).  While counsel writes that plaintiff is "physically and mentally disabled," Walton Letter at 1, the meaning of "incapacitated" for purposes of this provision is unrelated to the principal's health; a person trained in law and not medicine can only establish incapacitation by stating in writing that the principal is missing, detained, or "[o]utside the United States and unable to return."  D.C. Code § 21-2601.02(5)(B).  Therefore, plaintiff has failed to show that the power of attorney has become effective through any of the means set out in § 21-2601.09.

Plaintiff attempted to salvage the situation in his reply, observing that because the POA was signed on January 18, 2021, and Robinson first attempted to withdraw funds on January 20, 2023, the POA "is and was governed by the law in existence prior to February 23, 2023," the date the Uniform Power of Attorney Act – and the requirements in section 21-2601.09 – came into effect.  Reply at 1–2.  This argument conflates the question of whether a POA is *valid* with whether a POA is *effective*.

D.C. Code § 21-2601.06, "Validity of power of attorney," states: "[a] power of attorney executed in the District before [February 23, 2023] is valid if its execution complied with District law as it existed at the time of execution."  D.C. Code § 21-2601.06(b).  Plaintiff is correct that the *validity* of the POA is to be determined based on the law in place in 2021, but the bank has not challenged the validity of the POA, which appears to have been properly notarized at the time.  It

is the language in the Uniform Power of Attorney Act – which includes the provision concerning when a POA becomes *effective* – that is of greater relevance here: "[t]his chapter applies to a power of attorney created before, on, or after the effective date of this chapter." D.C. Code § 21-2604.03(1). D.C. law requires, then, that the Court must look to section 21-2601.09 to determine whether a valid POA has taken effect, and given plaintiff's failure to demonstrate that those prerequisites have been met, he has failed to meet his burden to demonstrate that he is likely to succeed on the merits.

**CONCLUSION**

Because plaintiff has failed to show that the POA has become effective in accordance with D.C. Code § 21-2601.09, he has failed to show a likelihood of success on the merits, and the Court need not consider the three remaining factors that bear on a request for interim injunctive relief. *See Ark. Dairy Coop. Ass'n Inc.*, 573 F.3d at 832. Accordingly, the Court will **DENY** plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and for Waiver of Bond [Dkt. # 2].

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE: July 5, 2023