## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ) | |
| WILLIE DELK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-1365 (ABJ) |
| ) | ***SEALED*** |
| PNC BANK, N.A., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Willie Delk, who describes himself as physically and mentally disabled, has filed an amended complaint bringing ten counts against defendant PNC Bank. The claims are predicated on multiple legal theories, but all arise out of the bank's response to the presentation of a Power of Attorney document by the individual named as plaintiff's agent in the document, who was seeking to withdraw funds from his account. The bank insisted on medical verification of the existence of the disability triggering the applicability of the Power of Attorney, and plaintiff maintains that this was unnecessary, unlawful, and a violation of his constitutional and statutory rights. While the Court recognizes that the agent's inability to withdraw cash on demand made it difficult for plaintiff to pay his bills and manage his affairs, and that this was undoubtedly a source of great stress and consternation, it finds that the actions the bank took to safeguard its elderly depositor's assets were in accordance with law, and that in the end, there is no legal foundation for the complaint. While plaintiff later docketed a document that purports to be submitted over a doctor's signature, the bank did not have that information at the time of the complained-of actions, so the additional material does not bear on the sufficiency of the complaint. Therefore, for the

reasons set forth in more detail below, the motion to dismiss the amended complaint will be **GRANTED.**

## BACKGROUND

According to the amended complaint, plaintiff, a resident of the District of Columbia, is a "bedbound, 79-year-old Africa[n] American male, who is physically and mentally disabled." Am. Compl. [Dkt. # 13] ¶¶ 3, 11.

Approximately two and a half years ago, in the District of Columbia, plaintiff executed a notarized document entitled "Durable Power of Attorney." *See* Ex. 1 to Pl. Willie Delk's Corrected Durable Power of Att'y [Dkt. # 5-1] ("POA"); Am. Compl. ¶ 9. The POA, dated January 18, 2021, appointed Romell Robinson as plaintiff's agent and attorney-in-fact "to act in the place and stead and with the same authority as the Principal . . . in the event of mental or physical disability of the Principal . . . ." POA at 1; Am. Compl. ¶ 9. The POA gave the agent the power to "conduct all business regarding . . . checking and savings account[s], including the deposit and withdrawal of funds, handling of safe deposit boxes, loans, or any other banking business regarding any and all financial institutions where the Principal maintains an account[s]." POA at 1 (brackets in original). The agent would also have the right to "make deposits and withdrawals of money" from any of plaintiff's bank accounts. *Id.* at 2. The POA further provided that it would not "be affected by subsequent incapacity or the lapse of time." *Id.* at 5.

Plaintiff has maintained a Performance Select Checking account with defendant bank for several years. Am. Compl. ¶ 15. He alleges that on January 20, 2023, his designated agent, Robinson, "presented a copy of Mr. Delk's Durable Power of Attorney to PNC officials" at one of defendant's branch offices, and that the "bank would not allow her to withdraw monies from Mr. Delk's account." Am. Compl. ¶ 16. Plaintiff alleges that the branch manager informed Robinson

that she would need a statement from the U.S. Veteran's Administration Hospital "describing and certifying the medical condition . . . ."  Am. Compl. ¶ 16.

Robinson allegedly went to the U.S. Department of Veteran Affairs Medical Center in Washington, D.C., and returned to the bank several days later with a one-paragraph statement printed on Department of Veterans Affairs letterhead ("January Letter").  Am. Compl. ¶¶ 17–18.  The document, signed by an individual named Oyesola Akintan on January 23, 2023, stated, in its entirety:

> To whom it may concern:
>
> This letter is acknowledged that Mr. Willie Delk is in my care. He is currently bedbound with memory loss. He is unable to do some of the activities that he used to do. His POA (Romell Robinson) is responsible to assist him in carrying out with his run around … .

Am. Compl. ¶¶ 17–18; Ex. 2 to Compl. [Dkt. # 1-1] at 6.

The letter did not describe Akintan's title or position or the extent or nature of the care she is providing; nor does it specify what connection, if any, she has with the VA Medical Center.[1]  *See* Ex. 2 to Compl.  Plaintiff complains about the fact that the bank continued to deny Robinson access to plaintiff's bank account even after receiving Akintan's letter.  Am. Compl. ¶ 18.  He asserts that on February 8 and 28, 2023, defendant "verbally declined" plaintiff's requests to allow Robinson to withdraw funds from his account because no physician's statement on office letterhead or a prescription pad had been provided.  Am. Compl. ¶ 18.

---

[1]    During the course of this case, plaintiff informed the Court that Akintan is a Home-based Primary Care Nurse Practitioner.  *See* Ex. 1 to Mot. to File Under Seal [Dkt. # 7-1] ("May Letter"). At a May 17, 2023 telephonic status conference, plaintiff's counsel also stated that Akintan is a registered nurse and not a physician.  *See* Mem. Op. and Order [Dkt. # 17] ("TRO Mem. Op.") at 3, n.2.

On March 14, 2023, counsel for plaintiff, Frazer Walton, Jr., filed a complaint against defendant with the U.S. Consumer Financial Protection Bureau ("CFPB") regarding defendant's refusal to "honor the POA." Am. Compl. ¶ 19; Ex. 3 to Compl. [Dkt. # 1-1] ("Walton CFPB complaint") at 7. In it, he stated that "Mr. Delk is physically disabled and unable to leave home[,]" but he said nothing about plaintiff's mental capacities. *Id.* He complained about the bank's refusal to honor the POA – "[a]ccording to bank officials, Ms. Robinson needed to provide the bank with a medical statement certifying my client's illness" – and he took the position that the bank's request for a physician's statement "was not and is not required under the 'Power of Attorney' document." *Id.* Defendant responded to the CFPB complaint on April 18, 2023, stating that plaintiff's request had been declined because a physician's statement was required "as the [POA was] effective upon disability of the principal . . . ." Am. Compl. ¶ 20; Ex. 6 to Compl. [Dkt. # 1-1] at 13. The bank reiterated that plaintiff was required to provide a physician's statement that was on letterhead or prescription pad, dated within the last twelve months, and signed by a physician, and which verified the "incapacity or inability of the principal to make financial decisions." Am. Compl. ¶ 20; Ex. 6 to Compl. at 13.

On April 19, 2023, plaintiff provided defendant with a document from Romell Robinson described as a "certification as to the validity of" the POA, Ex. 7 to Compl. [Dkt. # 1-1] ("Robinson Certification") at 14, as well as an "Opinion Letter" from his attorney of record. Ex. 8 to Compl [Dkt. # 1-1] ("Walton Letter") at 16. The attorney stated that plaintiff was "physically and mentally disabled," and he requested that defendant permit Robinson to conduct plaintiff's financial affairs in accordance with the POA. Walton Letter at 16. On May 3, 2023, Robinson returned to defendant's branch and again attempted to withdraw funds from plaintiff's checking account. Am. Compl. ¶ 28. Defendant denied the request. Am. Compl. ¶ 28.

On May 15, 2023, plaintiff brought this action seeking a declaratory judgment and injunctive relief requiring the defendant to accept plaintiff's POA and allow Robinson to withdraw funds from plaintiff's checking account at defendant's bank. *See* Compl. ¶ 1; Am. Compl. ¶ 1.[2] At the same time, he filed a motion for a temporary restraining order, seeking to enjoin the defendant "from preventing [p]laintiff's attorney-in-fact and agent [Robinson] from handling [p]laintiff's financial affairs at defendant's bank and preventing his agent from withdrawing funds . . . ." Pl.'s Mot. for TRO and Prelim. Inj. and for Waiver of Bond [Dkt. # 2] at 1.

On May 31, 2023, plaintiff filed a motion for leave to file under seal what he described as a "second medical statement from the U.S. Department of Veterans Affairs Medical Center[,]" which explains "the medical condition of the plaintiff as of May 22, 2023" and "also clarifies and describes the official position of Oyesola Akintan, who signed the medical statement on behalf of the government." Pl.'s Mot. to File Under Seal [Dkt. # 7] at 1. He did not specify the purpose for the filing of the document. *Id.* Over the defendant's objection, *see* Resp. of Def. to Pl.'s Motion

---

2    The lawyer's insistence that the terms of the POA have been satisfied due to plaintiff's mental disability raises obvious questions concerning plaintiff's competence to bring this action on his own behalf or to supply the affidavit that was submitted in support of the motion for interim relief. *See* May 11, 2023 Aff. of Willie Delk [Dkt. # 2-1] at 1-2 (stating that plaintiff is "bedbound," "physically and mentally disabled," and "now [has] some memory loss" and that his attorney "has informed PNC Bank that Romell Robinson is authorized to withdraw monies from [his] PNC Bank account . . . ."). It is not necessary to resolve those issues to address the pending motion, though, particularly given the limited nature of the information in the record at this time.

It is also troubling that the Amended Complaint includes paragraphs concerning actions taken by plaintiff's counsel that are written in the first person, *see e.g.*, Am. Compl. ¶ 11 ("Mr. Delk's attorney informed PNC Bank's Executive Client Relations Office during mid-March 2023 that his client wanted Ms. Romell Robinson to handle his financial affairs and that she be permitted to deposit and withdraw funds from his account. This was and continues to be the request of my client, Willie Samuel Delk. I also advised the bank of my client's status and condition as mentioned above."). The Amended Complaint and attached exhibits raise questions as to whether Mr. Walton can serve as both counsel and a potential witness in this action. Those too would be taken up if the complaint survived the motion to dismiss.

to File Under Seal [Dkt. # 8], the Court granted leave to file, stating, "[t]he Court notes that this order is not a ruling on whether the document can be used in connection with the pending motion for preliminary injunction."  Min. Order (May 31, 2023).  The sealed document purports to be a letter dated May 23, 2023 on Department of Veterans Affairs Medical Center letterhead from Oyesola Akintan, DNP, FNP, PMHNP, CRNP-BC.  *See* Pl.'s Unredacted Seal Document [Dkt. # 11-1] (SEALED) ("May 2023 Letter").  This time, Ms. Akintan identified herself as a home-based primary care nurse practitioner, and she stated that Mr. Delk had been under her care for conditions that rendered him homebound and unable to ambulate since January 23, 2023.  *Id.* at 1.  She adds:

> He was seen by the Psychiatrist on 5/22/23 was diagnosed with Neurocognitive disorder in addition to his ongoing medical conditions. The neurocognitive disorder prone Mr. Delk to ability [*sic*] to make decisions sometimes.[3]

*Id.*

On July 5, 2023, the emergency motion for temporary restraining order and preliminary injunction were denied on the basis that the plaintiff failed to show that the POA had become effective in accordance with D.C. Code § 21-2601.09, and thus failed to show a likelihood of success on the merits.  *See* TRO Mem. Op.

The defendant bank moved to dismiss the complaint on June 5, 2023, pursuant to Rule 12(b)(6).  Mot. of Def. to Dismiss [Dkt. # 12].  Later that day, the plaintiff filed an amended complaint.  Am. Compl.  It alleges that plaintiff has become "delinquent in the payment of his household bills, and the payment of his retained medical caregivers (nurses)" due to defendant's refusal to release the funds.  Am. Compl. ¶ 29.  The amended complaint does not have any exhibits, nor does it make any reference to the new submission from Ms. Akintan.

---

3       In the copy of the document made available to the Court on the docket, the block of information under the heading "To Whom It May Concern" appears to be pasted – slightly askew – onto a piece of VAMC letterhead and copied.  *Id.*

The amended complaint, which is now the operative complaint in the case, contains ten claims:

- Count One alleges discrimination on the basis of plaintiff's status as a veteran, in violation of Title II of the Civil Rights Act of 1964;

- Count Two alleges discrimination on the basis of race in violation of Title II of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 for discrimination on the basis of race;

- Count Three alleges a violation of Title II of the Civil Rights Act of 1964 for discrimination on the basis of sex;

- Count Four alleges a violation of the Americans with Disabilities Act for discrimination on the basis of mental and physical disability;

- Count Five alleges a violation of Title II of the Civil Rights Act of 1964 for discrimination on the basis of age;

- Count Six alleges a violation of Title II of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 *et seq.*, for discrimination on the basis of reprisal;

- Count Seven alleges a violation of the DC Human Rights Act for discrimination on the basis of race, sex, age, reprisal, mental and physical disability, and veterans status;

- Count Eight alleges a violation of D.C. Code § 21-2601.01 *et. seq.*, the currently operative Uniform Power of Attorney Act;

- Count Nine alleges a violation of D.C. Code § 21-2101.01 *et. seq.*, the now-repealed Statutory Power of Attorney Act; and

- Count Ten alleges a violation of breach of contract.

Am. Compl. ¶¶ 32-98.

On June 20, 2023, the defendant filed a motion to dismiss all of the counts in the amended complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted. Mot. of Def. to Dismiss Am. Compl. [Dkt. # 14] ("Mot."). Plaintiff opposed the motion on June 23, 2023, Pl.'s Opp. to Mot. [Dkt. # 15] ("Opp."), attaching multiple exhibits, and the defendant filed its reply on June 30, 2023. Reply Mem. in Supp. of Mot. [Dkt. # 16] ("Reply").

Plaintiff also filed a motion for partial summary judgment on July 10, 2023.  Pl.'s Mot. for Partial Summ. Judgment [Dkt. # 20].  On July 11, 2023, the Court stayed consideration and further briefing of that motion pending resolution of the motion to dismiss.  *See* Min. Order (July 11, 2023).

On July 13, 2023, after one failed attempt,[4] plaintiff docketed an exhibit to his Amended Complaint, a sealed letter from Dr. Peter J. Curran.  *See* Letter from Dr. Peter J. Curran M.D., Medical Director, Home Based Primary Care, Washington, DC VAMC [Dkt. # 23] (SEALED) ("Curran Letter").[5]  While Dr. Curran has never personally examined Mr. Delk, he offered an assessment of the plaintiff's cognitive disability after "conferring with Mr. Delk's VA primary care provider, his caregiver Ms. Robinson, and reviewing opinions of the VA psychiatrist in the medical record." *Id.*

> Mr. Delk has been enrolled in the VA Home Based Primary Care Program since January 23, 2023. He has been homebound and dependent on others for personal care, including activities of daily living and managing financial affairs. He receives around the clock care in the home. Mr. Delk has been diagnosed with mixed dementia including Alzheimer's disease, which affects cognitive ability and memory.  Our records indicate that he has known his personal caregiver, Ms. Robinson, for approximately 25 years.

*Id*.  The letter does not indicate when the cognitive challenges were first identified, although Ms. Akintan's May 23, 2023 Letter referred to a psychiatric evaluation the day before.  May 2023 Letter.

---

4       *See* July 7, 2023 Pl. Willie Delk's Second Motion to File Under Seal [Dkt. # 18] and the Court's July 10, 2023 Minute Order denying leave to file without prejudice.  ("While the Court has no objection to the submission of medical information under seal, plaintiff proposed to add a new document to the docket without providing any explanation as to what the document is being submitted for, whether it is meant to be a supplemental exhibit in support of a particular pleading, or what.").

5       A redacted version of this letter can be found at Dkt. # 19-1.

None of this information was available to the bank at the time of the events in question, nor was it part of the original complaint or amended complaint until after the motion to dismiss was fully briefed. So while it might bear on the question of forward looking relief, it does not bear on the sufficiency of the allegations concerning the bank's actions in January through April of 2023.[6]

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

---

6       On May 14, 2024, plaintiff filed another motion for leave to file a document without specifying what it was being docketed as or for. Pl.'s Mot. and Notice of Filing of the Appointment of Romell Robinson as Pl.'s Department of Vetrans [*sic*] Affairs Fiduciary [Dkt. # 24] ("Pl. Mot."). This time, he seeks to docket the first page of what appears to be a longer letter dated April 3, 2024 from the Department of Veterans Affairs Fiduciary Intake Center, appointing Ms. Robinson as Mr. Delk's fiduciary pursuant to 38 U.S.C. § 5507. *See* Dkt. # 24-1. The Court agrees with the defendant's opposition to the motion, Def.'s Opp. to Pl.'s Mot. to Permit the Notice of Filing [Dkt. # 26], on the grounds that the decision was made well after the events set forth in the amended complaint, so it cannot be incorporated in that document and does not bear on the sufficiency of those claims, and that the standard for the appointment of a fiduciary for purposes of receiving veteran's benefits under section 5507 is different than the standards governing the showing of incapacity needed to trigger a POA contingent upon the disability of the principal, so it is irrelevant. Therefore, that motion will be **DENIED.**

678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Notwithstanding plaintiff's attempt to add heft to his original complaint with an array of alternative theories of liability, the bank's response to the agent's presentation of the Power of Attorney document lies at the heart of all of them, and therefore, the Court will take it up first.

### I.    Plaintiff fails to state a claim under the D.C. Uniform Power of Attorney Act.

The Court has already had occasion to address the question of whether plaintiff alleged the existence of a valid and effective POA when it considered the likelihood of success on the merits in connection with the motion for a temporary restraining order, *see* TRO Mem. Op. 6-10, and the amendments to the complaint do not alter the legal landscape.

The Court explained in its ruling that in order to establish that the bank was bound to honor the POA, plaintiff must show that the document was both valid and effective. *See id.* at 6. While plaintiff and the bank seemed to agree that the POA was valid, the Court found that plaintiff failed to allege facts that would support a finding that the POA was effective under the D.C. Uniform Power of Attorney Act when it was presented to the bank. § 21-2601.01. *Id.*

The Act "applies to a power of attorney created before, on, or after the effective date of the [Act] (February 1, 2023)," and the document at issue was created on January 18, 2021.[7]

D.C. Code § 21-2601.09(a) provides: "A power of attorney is effective when executed unless the principal provides in the power of attorney that it becomes effective at a future date or upon the occurrence of a future event or contingency."

---

[7]    Nurse Practitioner Akintan's January and May letters both state that plaintiff has been under her care since January 23, 2023. *See* January Letter; May Letter. Since that was two years after the POA was executed, there is no evidence in the record suggesting that that its validity should be questioned on the grounds that plaintiff was incapacitated at the time it was signed.

The POA in this case is expressly conditioned on the event of plaintiff's physical or mental disability, as it appoints Robinson to act as plaintiff's agent "*in the event* of mental or physical disability of the [p]rincipal . . . ."  POA at 1 (emphasis added).  The statute goes on to dictate how this type of POA becomes effective:

> If a power of attorney becomes effective upon the principal's incapacity and the principal has not authorized a person to determine whether the principal is incapacitated, or the person authorized is unable or unwilling to make the determination, the power of attorney becomes effective upon a determination in a writing or other record by:
>
> (1) A physician that the principal is incapacitated within the meaning of § 21-2601.02(5)(A)[8]; or
>
> (2) An attorney at law, a judge, or an appropriate governmental official that the principal is incapacitated within the meaning of § 21-2601.02(5)(B).

D.C. Code § 21-2601.09(c).  Since the POA does not identify a person authorized to make the determination, it may only become effective under one of those two options.

The Court has already found that the submission of the letter from Nurse Practitioner Akintan, even as supplemented in May of 2023, failed to satisfy the requirements of subsection (c)(1) for the simple reason that Nurse Practioner Akintan is not a physician.  *See* TRO Mem. Op. at 8-9.  Plaintiff also failed to satisfy the requirements of subsection (c)(2).  While counsel asserted in his own letter that plaintiff is "physically and mentally disabled," Walton Letter at 1, that is not the sort of information the statute authorizes individuals trained in law and not medicine to provide.  "Incapacity" within the meaning of § 21- 2601.02(5)(B) includes only an individual's inability to manage his affairs because he is (i) missing; (ii) detained, including incarcerated in a penal system;

---

8    D.C. Code § 21-2601.02(5)(A) defines "incapacity" as the inability of a person to manage property or business affairs because the individual "[h]as an impairment in the ability to receive and evaluate information or make or communicate decisions even with the use of technological assistance."

or (iii) outside the United States and unable to return.  So the Walton letter was also insufficient to activate the POA.  *See* TRO Mem. Op. at 9; D.C. Code § 21-2601.02(5)(B).[9]

The opposition makes several other attempts to salvage the claim predicated on the D.C. statute.  First, plaintiff argues that the predecessor statute, the General Power of Attorney Act, D.C. Code § 21- 2101.01 *et seq*, should govern instead of the D.C. Uniform Power of Attorney Act. Opp. at 4.  He submits that because the POA was signed on January 18, 2021, and Robinson first attempted to withdraw funds on January 20, 2023, the POA is and was governed by the law in existence prior to February 23, 2023, the date the Uniform Power of Attorney Act came into effect. *Id.* at 4-6.  As the Court previously held, "[p]laintiff is correct that the *validity* of the POA is to be determined based on the law in place in 2021, but the bank has not challenged the validity of the POA, which appears to have been properly notarized at the time."  TRO Mem. Op. at 9.  The issue remains, however, whether the POA was effective.  As noted in the Memorandum Opinion on the TRO, the D.C. Uniform Power of Attorney Act, which addresses that subject, expressly provides that "[t]his chapter applies to a power of attorney created before, on, or after the effective date of

---

9    The "Opinion Letter" was problematical for other reasons as well.  The Court notes that Mr. Walton stated on page two of his letter that "Mr. Willie Samuel Delk's intent was to have this Power of Attorney take effect on January 18, 2021."  Walton Letter at 2.  But that is inconsistent with the plain language of the POA, and also inconsistent with the sentence on page one of Walton's own letter that "[o]n January 18, 2021, my client instructed me to prepare a Power of Attorney . . . on his behalf and he appointed Romell Robinson as his agent and attorney-in-fact to act . . . with the same authority as the Principal . . . in the event of mental or physical disability of the Principal."

The opposition to the motion to dismiss reports that plaintiff spoke to a PNC Client Relations Representative in March of 2023 to request that Robinson be permitted to act as his agent, Opp. at 6, and it points to the allegations in the Amended Complaint that the Visiting Angels Living Assistance Services accepted Robinson's electronic signature on a VA Client Services Agreement, and that PNC made direct payments to the Visiting Angels Homecare Service Company, Am. Compl. ¶ 25, as circumstances that support a finding that the bank was aware of his physical and mental disability.  Opp. at 6 n.3.  But that is not the test, and these events did not satisfy the requirements of D.C. Code § 21-2601.09(c).

this chapter." D.C. Code § 21-2604.03(1). Thus, the Uniform Power of Attorney Act governs the determination of whether the bank was required to honor it.

Second, plaintiff repeats his previously unsuccessful argument that the POA was not conditioned on the event of Delk's mental and physical condition. Opp. at 6. This is clearly contradicted by the language of the POA, which states Robinson is authorized to act as plaintiff's agent "*in the event of* mental or physical disability of the principal . . . ." POA at 1 (emphasis added). Plaintiff attempts to argue the condition precedent is invalidated by other language in the POA which states that the document "shall not be affected by subsequent incapacity or the lapse of time." Am. Compl. ¶ 88. As the Court previously held: "this provision does not contradict or invalidate the explicit terms setting forth the necessary predicate for when the POA becomes effective; rather, it establishes the durability of the POA, because a POA otherwise 'terminates when . . . [t]he principal becomes incapacitated, if the power of attorney is not durable.'" TRO Mem. Op. at 7, quoting D.C. Code § 21-2601.10(a)(2). The durability of the POA does not negate plaintiff's duty to show the condition precedent of the POA had been satisfied.

For these reasons, **Count Eight**, plaintiff's claim under D.C. Code § 21-2601.01 *et. seq.* will be **DISMISSED** for failure to state a claim on which relief can be granted. This hole in the heart of plaintiff's complaint leaves plaintiff with little opportunity for legal recourse based on any other legal theory, because it was the bank's entirely lawful insistence on a proper showing that the agent was indeed authorized to withdraw its account holder's funds that forms the sole basis for the discrimination claims.

What about Count Nine, plaintiff's claim under the predecessor statute, D.C. Code 2101.01 *et. seq.*? This fails as a matter of law as well since when the power of attorney law was repealed in favor of section 21-2601.01, the new statute explicitly announced: "[t]his chapter

applies to a judicial proceeding concerning a power of attorney commenced on or after the effective date of this chapter," which was February 23, 2023. D.C. Code § 21-2604.03(2). Since this action was commenced on May 15, 2023, the D.C. Uniform Power of Attorney Act applies, and **Count Nine** will be **DISMISSED**.

### II. Plaintiff fails to state claims under Title II of the Civil Rights Act.

Title II of the Civil Rights Act provides: "[a]ll persons shall be entitled to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of *race, color, religion or national origin*." 42 U.S.C. § 2000a(a) (emphasis added).

Plaintiff alleges discrimination on the basis of his veteran's status (Count One), race (Count Two), sex (Count Three), age (Count Five), and "reprisal" (Count Six) in violation of Title II. Am Compl. ¶¶ 32-78. Defendant moves to dismiss Counts One, Three, and Five on the grounds that Title II does not cover discrimination on the basis of one's status as a veteran, sex, or age. It also contends that the bank does not qualify as a "public accommodation" under the statute, and that plaintiff does not allege sufficient facts to plead a *prima facie* case of discrimination.

Defendant is correct that plaintiff's allegations of discrimination on the basis of veteran's status, sex, and age are not covered under the plain text of Title II of the Civil Rights Act, which prohibits discrimination in places of public accommodation on the basis of "race, color, religion, or national origin." 42 U.S.C.A. § 2000a(a); *see also Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 30 (D.D.C. 1998) (finding that plaintiff failed to state a claim for sex discrimination under Title II because the statute "only applies to discrimination based on race, color, religion, or national origin, not to sex based discrimination."). Plaintiff acknowledges this and suggests — without citing authority for this principle — that additional grounds should be "inferred" because "civil rights laws and other remedial statutes are to be construed liberally to achieve their remedial purposes."

Opp. at 15. He then goes on to cite cases interpreting the Longshoremen's and Harbor Workers' Compensation Act, a statute which has no bearing on this case. *Id.* Based on the plain text of the statute, then, Counts One, Three, Five (discrimination on the basis of veteran's status, sex, and age in violation of Title II), and Six (reprisal in violation of Title II) should be dismissed.

Defendant also goes on to argue that it does not qualify as a Public Accommodation for purposes of the statute, as banks are not expressly included in the list of establishments covered by Title II. 42 U.S.C.A. § 2000a(b). Other courts in this district have adopted narrow interpretations of Title II, finding that [t]he statute "sets forth a comprehensive list of establishments that qualify as a place of public accommodation and in so doing excludes from its coverage those categories of establishments not listed." *Foster v. Howard Univ. Hosp.*, 2006 WL 2938701, at *2 (D.D.C. Oct. 13, 2006), quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431 (4th Cir. 2006); *see also Kalantar v. Lufthansa German Airlines,* 402 F. Supp. 2d 130, 139 (D.D.C. 2005) (finding that an airline did not qualify as a public accommodation because it was not included within Title II's enumerated category of establishments).

Even if the bank does qualify as a "public accommodation" for purposes of Title II as it does under other statutory regimes, the complaint is woefully deficient. A review of the Amended Complaint reveals that when the relevant facts are laid out in the "Background" section, Am. Compl. ¶¶ 14-32, the recitation is devoid of any facts concerning plaintiff's race (or any other protected status) beyond the descriptive statements that "Mr. Delk is a bedbound 79 year-old African American male who is physically and mentally disabled" and that he is a decorated Vietnam War veteran. Am. Compl. ¶ 14. Otherwise, the factual recitation details what took place at the bank and during further discussions with the bank, and it does not allege that plaintiff's race – or any of his other protected characteristics – was ever mentioned.

The "causes of action" sections that follow, though, include a series of conclusory allegations, and Count Two posits that what took place adds up to discrimination based on race:

> 45. As a customer of Defendant, Plaintiff was treated differently and subjected to disparate treatment in comparison to non-Black male customers of the Defendant bank.
>
> 46. The reason(s) proffered for Defendant's unlawful conduct, including that PNC's refusal to allow his POA agent Romell Robinson to access and withdraw monies from Mr. Delk's account was the result of the PNC's discriminatory conduct and total disregard of Plaintiff's military status, health, age, and race. PNC's explanations for its conduct in refusing access to Plaintiff's account are not legitimate and are a pretext for its discriminatory conduct.
>
> 47. Defendant knew at all times during the events described throughout this Complaint that Plaintiff is a Black male.
>
> 48. Plaintiff has been treated differently and subjected to different terms and conditions of his customer status due to his race (Black).
>
> 49. Other bank customers who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of their customer account status.

Am. Compl. ¶¶ 45-49.

A complaint must provide factual allegations that at least show a "nexus between defendants' alleged discriminatory motive and the adverse action." *Easaw v. Newport*, 253 F. Supp. 3d 22, 30 (D.D.C. 2017) (internal citations omitted). It is true that at one point, the D.C. Circuit formulated the standard more permissively, stating that "complaints need not plead law or match facts to every element of a legal theory," so plaintiffs need not "make out a prima facie case of discrimination," and "'I was turned down for a job because of my race' is all a complaint has to say." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114-15 (D.C. Cir. 2000) (brackets and internal quotation marks omitted). However, this Court agrees with the others in this district that have persuasively concluded that *Sparrow* was abrogated by *Iqbal* and *Twombly*. *See Easaw*, 253

F. Supp. 3d at 29, n.4 ("[T]he undersigned joins the chorus of Judges of this Court who have held that *Sparrow* is no longer binding authority after *Twombly* and *Iqbal*."); *McManus v. Kelly*, 246 F. Supp. 3d 103, 111 (D.D.C. 2017) ("[A]lthough the issue is not entirely settled, the Court is convinced that the *Sparrow* pleading standard is no longer controlling."); *Jackson v. Acedo*, No. 08-1941, 2009 WL 2619446, at *4 (D.D.C. Aug. 26, 2009) ("The Court . . . concludes that *Sparrow* is no longer binding authority in light of these observations by the Supreme Court in *Twombly* . . . .").

It is notable, then, that plaintiff does not recount a single factual circumstance that would support a plausible inference that the bank's reaction to Ms. Robinson's request for access to plaintiff's funds was based on plaintiff's race, and there are absolutely no facts underlying the claim that requests concerning accounts held by individuals of other races have been or would be treated differently.

But no matter which standard applies, the more significant problem in this case is that the only allegedly "discriminatory conduct" in Count Two of the amended complaint is the bank's allegedly "unlawful conduct" of calling for medical verification before it gave plaintiff's money to someone else.  Am. Comp. ¶ 46. The Court has already found as a matter of law that the bank's position was not unlawful; indeed, it was required under the D.C. Power of Attorney Act (and

consistent with the Account Agreement that is the subject of Count Ten). [10] **Count Two** will be

**DISMISSED** for failure to state a claim on which relief can be granted.

The same problem would doom the other Title II discrimination counts even if they fell

within the ambit of the statute. *See* Am. Compl. Count One (veteran's status) ¶ 36 ("PNC

intentionally disregarded Mr. Delk's status as a 79-year-old bedbound decorated U.S. Army

veteran *when defendant refused to acknowledge and accept the January 23, 2023 U.S. Department

of Veterans Affairs Medical Center Letter*, which described Mr. Delk's medical condition.")

(emphasis added); Am. Compl. Count Three (sex) ¶¶ 56-57 ("As a customer of Defendant, Plaintiff

---

[10]    While the Court has ruled that Count Nine, the claim based on the repealed Power of Attorney Act, § 21-2101.01 *et. seq.*, must be dismissed, it is true that the amended complaint alleges that two events took place while the predecessor statute was still in effect. Plaintiff alleges that his agent appeared in the bank with a copy of the Power of Attorney document on January 20, 2023, and was told that she must provide verification of the plaintiff's incapacity before the bank would dispense his funds. Am. Compl. ¶ 16. He also alleges that after she returned with the Akintan letter on February 8, she was also turned away. Am. Compl. ¶¶ 18, 103. Would those two paragraphs be sufficient to allege wrongful conduct if plaintiff had sufficiently alleged that it was animated by discrimination? The problem for plaintiff is that he cannot point to any provision in the predecessor statute that might have been violated by this action. The statute sets out the language that must be included in a valid Power of Attorney, and it contains multiple provisions as to how a valid POA is to be construed in various financial and business circumstances, but it includes no guidance as to what would be required to establish that it has become effective if by its terms, it triggered by the disability of the principal. Moreover, plaintiff's Account Agreement with the bank provided that:

> Any individual acting as an attorney-in-fact, agent, guardian, personal representative, trustee, custodian or some other fiduciary capacity (collectively, an "agent") must be designated by us as such on our records. If this individual is not so designated, it will be assumed by us that you have no agent appointed . . . We have the right to review and retain a copy of any power of attorney, agency agreement, trust agreement, court order or other document that has established the agency or other fiduciary relationship.

Account Agreement for Personal Checking, Savings, and Money Market Accounts, Ex. 1 to Mot. [Dkt. # 14-2] ("Account Agreement") at 9. Since the fiduciary relationship under the POA was to be "established" when the plaintiff became disabled, the bank was acting within its rights in late January and early February 2023 when it called for documentation to assure itself that it was appropriate to permit Ms. Robinson to withdraw plaintiff's funds.

was treated differently and subjected to disparate treatment in comparison to non-Black male customers of the Defendant bank . . . *PNC's refusal to allow his POA agent Romell Robinson to access and withdraw monies from Mr. Delk's account was the result of the PNC's discriminatory conduct* . . . PNC's explanations for its conduct in refusing access to Plaintiff's account are not legitimate and are a pretext for its discriminatory conduct.") (emphasis added); Am. Compl. Count Five (age) ¶¶ 74, 76 ("*Because of Plaintiff's age the Defendant refuses to allow Plaintiff's attorney-in-fact and agent (Romell Robinson) to handle his PNC banking affairs (withdraw funds from Plaintiff's performance checking account at said bank* . . . Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's customer account relations because Plaintiff's designated and authorized agent was unable to withdraw funds from Plaintiff's checking account.") (emphasis added).

Therefore, all of the discrimination claims under Title II – **Counts One, Two, Three, and Five** – will be **DISMISSED.**[11]

---

11    The fact that plaintiff also predicates the racial discrimination claim in Count Two on 42 U.S.C. § 1981 does not alter the outcome, as there is only one set of factual allegations underlying the claim.  Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship," 42 U.S.C. § 1981(b).   To state a section 1981 claim for racial discrimination, a plaintiff must allege sufficient facts showing that he is a member of a protected class, he suffered an adverse action, and the adverse action "gives rise to an inference of discrimination."  *See Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (explaining that courts use the same framework for establishing racial discrimination under section 1981 as claims under Title VII of the Civil Rights Act).   While section 1981 claims "most commonly involve contracts of employment," the provision "also prohibits refusal of service based on race."  *Bonner v. S-Fer Int'l, Inc.*, 207 F. Supp. 3d 19, 23 (D.D.C. 2016) (citations omitted). But here, the sole discriminatory adverse action alleged is the lawful refusal to honor the POA before it was verified in accordance with DC law.  Therefore, to the extent Count Two relies on section 1981, it is also **DISMISSED**.

### III.   Plaintiff fails to state a claim under the Americans with Disabilities Act.

In Count Four, plaintiff alleges discrimination based on his alleged mental and physical disability in violation of the ADA.  Am. Compl. ¶ 65-66.  Plaintiff alleges he suffered a mental and physical disability, memory loss and lack of physical mobility due to illness, which was known to the defendant.  Am. Compl. ¶ 67.

Plaintiff has experienced some difficulty putting his finger on the particular statutory provision that is relevant here.  In his amended complaint, plaintiff cited 42 U.S.C. § 12112, which covers discrimination in the employment sector.  *See* Am. Compl. ¶ 68.  In his opposition to the motion to dismiss, plaintiff directs the Court to 42 U.S.C. § 12101.  Opp. at 17.  This statutory provision, however, is the Findings and Purposes section of the ADA and cannot provide a statutory basis for civil claims.  Based on the nature of the complaint, the Court will proceed as if plaintiff intended to cite 42 U.S.C. § 12182, which prohibits discrimination in places of public accommodation.  Am. Compl. ¶ 68; 42 U.S.C. § 12182 ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.").

The statute goes on to identify specific prohibited actions or omissions that would fall into the category of discriminatory acts.  They include not only the failure to remove architectural or communications barriers, but also, for example, "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations," "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can

demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;" or a failure to take such steps as may be necessary to ensure that no individual with "a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ."  42 U.S.C. § 12182(b)(A)(i), (ii), and (iii).  Plaintiff does not identify which form of discrimination is at work here, but as with the other discrimination claims, there is a separate fundamental flaw in the claim.

To make a discrimination claim under 42 U.S.C. § 12182, plaintiff must allege: (1) he qualifies as disabled within the meaning of the ADA, (2) defendant is a public accommodation, and (3) defendant discriminated against him to deny full and equal opportunity to enjoy their goods and services.  *See Brown v. Whole Foods Mkt. Grp., Inc.,* 789 F.3d 146, 151 (D.C. Cir. 2015). Construing the facts in the light most favorable to the plaintiff, the Court will assume that elements one and two are satisfied.  *See* 42 U.S.C. § 12102(1)(A) (disabilities include "a physical or mental impairment that substantially limits one or more major life activities of such individual"); 42 U.S.C. §12181(7)(F) (defining public accommodations as including banks).[12]

Plaintiff's discrimination claim fails in any event, because Delk has not alleged sufficient facts to state a plausible claim that he was denied full and equal access to defendant's services.  As with all of the other discrimination counts, plaintiff's claim that he was deprived of what he was due is based on a single factual allegation: that defendant bank discriminated against him by "refusing to respect, recognize and allow Delk's attorney-in-fact and agent to serve his banking

---

[12]     In the motion to dismiss, defendant argues that plaintiff has failed to show that he had a disability under the ADA and the defendant had notice of it.  Mot. 16.  It points out that the case revolves around its efforts to verify the alleged disability and thus, the first element has not been satisfied.  Mot. 16.  Even assuming plaintiff successfully pled a disability under the ADA, though, his claim would fail on other grounds.

needs." Am. Compl. ¶ 68. As the Court previously ruled, this was in accordance with law, indeed, in accord with the very legal provisions that require that a bank be vigilant when someone presents themselves as authorized to walk away with a disabled person's money.

Moreover, plaintiff has not pled any facts that would tend to show that agents for non-disabled customers were treated differently or subjected to different procedures. Mot. 17. For all of these reasons, **Count Four** fails to state a claim under the ADA for which relief can be granted, and it will be **DISMISSED.**

## IV. Plaintiff has not stated a claim under the D.C. Human Rights Act.

In Count Seven, plaintiff alleges discrimination on the basis of race, sex, age, reprisal, mental and physical disability, and veterans' status in violation of the D.C. Human Rights Act ("DCHRA"). Am. Compl. ¶¶ 83-84. Defendant moves to dismiss the claim on the grounds that plaintiff fails to cite a specific provision of the D.C. Human Rights Act that supports the claim or to allege any facts in support of his claims. Mot. at 17-18.

Even if plaintiff had successfully cited an applicable provision of the DCHRA, Count Seven would fail to state claim on which relief can be granted. The DCHRA makes it unlawful to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" on the basis of race . . . sex, age . . . [and] disability." D.C. Code § 2-1402.31(a)(1).[13] A successful denial-of-public-accommodations claim under D.C. Code § 2-1402.31(a)(1) requires proof that a defendant "(1) is a 'place of public accommodations'; (2) denied the plaintiff 'goods, services, facilities, privileges, advantages, [or] accommodations'; and (3) acted 'wholly or partially for a

---

13      The DCHRA's prohibition on discrimination in public accommodations does not cover discrimination on the basis of veteran's status or on the basis of reprisal, providing a separate reason for why plaintiff fails to state a claim for these two alleged violations.

discriminatory reason based on' a protected characteristic." *Pietrangelo v. Refresh Club, Inc.*, 2023 WL 6388880, at *4 (D.D.C. Sept. 29, 2023), quoting *Sumes v. Andres*, 938 F. Supp. 9, 12 (D.D.C. 1996) (interpreting a predecessor provision of section 2-1402.31(a)(1)).

In the two paragraphs that comprise Count Seven, plaintiff sets out no facts but simply "incorporates all information, facts, law and/or allegations and realleges the facts set forth above and contained in the preceding paragraphs."  Am. Compl. ¶¶ 84-85.  This means that the count rises and falls, like the others, on the allegedly wrongful acts of refusing to allow Robinson to withdraw funds and requesting additional documentation; the preceding paragraphs are devoid of any other factual allegations supporting a plausible inference of discrimination on any basis.  Given the Court's findings that the bank acted in accordance with law, as it is required to do, plaintiff's claims in **Count Seven** under the DCHRA will be **DISMISSED** for failure to state a claim on which relief can be granted.

### V.  Plaintiff fails to allege retaliation under either Title II or section 1981.

In Count Six, plaintiff alleges what he refers to as discrimination on the basis of reprisal in violation of Title II of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  Am. Compl. ¶¶ 78-83.

Section 1981 gives citizens the same right "to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  The Supreme Court has interpreted section 1981 "to prohibit not only racially discriminatory government interference with private contracting but also purely private discrimination in contracts." *Fair Employment Council v. BMC Mktg. Corp.,* 28 F.3d 1268, 1280 (D.C. Cir. 1994), citing *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Section 1981 allows plaintiffs to raise retaliation claims when retaliation occurs in response to a plaintiff's asserting rights protected under section 1981. *See id* at 1279-1280. ("Implicit in § 1981 . . . is a cause of action protecting people from private retaliation for . . . exercising their own § 1981 rights.").  To state a retaliation claim under section 1981, a plaintiff must show "that he

engaged in protected activity . . . and that his employer took an adverse employment action against him because of that activity." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 578 (D.C. Cir. 2013) (citations omitted).

The amended complaint alleges that on March 14, 2023, plaintiff's legal counsel filed a complaint about the bank's treatment of plaintiff and his agent with the U.S. Consumer Financial Protection Bureau ("CFPB"). Am. Compl. ¶ 19. He alleges that in response, defendant wrote a letter to him through the CFPB portal, stating that it reviewed his request to release funds and required a physician's statement on his letterhead or pad. Am. Compl. ¶ 20.

Defendant moves to dismiss this count as well. And here, once again, the only conduct underlying the claim is conduct that the Court has found was legally appropriate. Indeed, the only allegedly retaliatory action in the amended complaint is the bank's reiteration of the position that was the subject of the complaint: that a letter signed by a physician was necessary to establish that the POA had become effective. So plaintiff has not plausibly alleged that anything adverse occurred in response to the CFBP complaint, even if it did constitute a protected report. Therefore, plaintiff's retaliation claim in **Count Six** will be **DISMISSED.**[14]

### VI.    Plaintiff fails to state a claim of breach of contract.

Finally, in Count Ten, plaintiff alleges that defendant breached the contract executed when he opened the performance checking account when it refused to allow Robinson to withdraw funds

---

[14]    Plaintiff does not cite to any particular statutory provision of Title II of the Civil Rights Act in his amended complaint and focuses solely on retaliation under section 1981 in his opposition brief. *See* Opp. at 9-12. To the extent plaintiff sought to allege a violation under section 2000a-2(c) of Title II, which prohibits "punish[ing] or attempt[ing] to punish any person for exercising or attempting to exercise any right or privilege secured by" Title II, *see* 42 U.S.C. § 2000a-2, he has also failed to state a claim for the same reason that he has failed to state a retaliation claim under section 1981: the defendant bank's lawful request for the proper medical documentation does not reflect retaliatory punishment.

from that account.  Am. Compl. ¶¶ 97-98.  To prevail on a breach of contract claim under D.C. law, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  Both parties agree that the account agreement constituted a valid contract. *See* Mot. at 8-9; Opp. at 9.

As both parties acknowledge there was a valid contract, the question then becomes whether defendant breached an obligation which arose from this contract.  Plaintiff alleges that "[d]efendant's action in refusing to allow Plaintiff Delk's agent, Romell Robinson to withdraw funds from his account constitutes a breach of contract, bad faith and a violation of the terms and conditions of his rights as a customer of PNC Bank."  Am. Compl. ¶ 104.  Defendant points out that plaintiff fails to identify any specific provision contained in the Account Agreement that would be the source of the obligation to honor a Power of Attorney document without the statutorily necessary verification. Mot. at 9.[15]  The Agreement does contain an express provision about attorneys-in-fact or other agents, though:

> Any individual acting as an attorney-in-fact, agent, guardian, personal representative, trustee, custodian or some other fiduciary capacity (collectively, an "agent") must be designated by us as such on our records. If this individual is not so designated, it will be assumed by us that you have no agent appointed.

Account Agreement at 9.  Plaintiff does not allege that Ms. Robinson was designated to act on his behalf in the bank's records, so the claim does not give rise to a plausible inference that the contract

---

[15]    Plaintiff did not attach the contract underlying this claim to the complaint at all.  However, the defendant bank supplied it as an exhibit to its motion to dismiss, *see* Account Agreement, and since the document was expressly referenced in the complaint, the Court may consider it in connection with the motion.

was violated.  Moreover, as defendant correctly argues, there is "no provision in the Account Agreement that supersedes District of Columbia law."  Mot. at 9.

For all of these reasons, the breach of contract claim in **Count Ten** will be **DISMISSED** for failure to state a claim on which relief can be granted.

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the amended complaint [Dkt. # 14] is **GRANTED.**  Plaintiff's motion for partial summary judgment [Dkt. # 20] is **DENIED** as moot.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  September 9, 2024